shield away, around the line marked by the cartridge, excepting in the line of fire. Huber says he did so file it, and found it to work well thereafter. The defendant did not try it again, but was satisfied with Huber's report, and gave the model to Mr. Prescott, then, or soon after, his foreman, to make tools by for manufacturing the pistols.

A good deal of doubt is thrown by the plaintiffs' rebutting evidence upon the alleged fact of Huber's making any such pistol at that time.

It is not contended that any other pistol of this kind was made until after the admitted date of the plaintiffs' invention. And we are disposed to consider the weight of the whole evidence, including the copy of the defendant's contemporaneous letter to Rollin White, to be that he was not ready to make and sell in the market any pistols of this general class until January, 1859. This tends to increase the doubt of the correctness of the date for the model pistol, because it makes a very long interval for the carrying a successful experiment into practice.

But there is still greater doubt whether the model pistol, whenever made, contained any such protuberance on the recoil shield as would fairly anticipate the plaintiffs' invention. Prescott, who took charge of it to make the tools by, observed nothing of the kind, nor did any one else. The pistol itself is not produced. Its non-appearance is accounted for by the allegation sworn to by all the witnesses, who are asked to explain that circumstance, that, after the tools were made, it was of no importance. But no tool was made to carry out this part of the model. The explanation, therefore, fails, because the model would still remain important in this part. Again, it is perfectly certain, and is now admitted, that many, and probably most, of the pistols first made by the defendant were not filed at all. The plaintiffs have produced four such, made by the defendant during the year 1859. The defendant has produced none that were filed. Many witnesses who were in a position to know, and who examined many of the pistols, and who worked on all parts of them, saw and heard nothing of such a filing as is now sought to be established; and the majority of all who knew of any filing, speak of it as a filing in different parts of the shield, wherever the cartridges happened to bind. And the weight of the evidence decidedly is, that the whole matter of filing was left to the judgment of the fitters or finishers, without any model, or any definite or uniform plan upon which it was to be done. And there is no evidence that the model pistol was retained, for any purpose, for a single day after the tools were made.

Again, when the defendant came to make the large sized pistols, in which the binding is much greater, as it was obvious that it would be, and this was after the plaintiffs' original application for a patent, he made the shields entirely flat, and three uncontradicted witnesses say that they saw him trying one of these larger pistols in August, 1859, and that it would not revolve; and a suggestion being made by one of the bystanders that it needed a raised part on the shield, he said that he could not do that, as he had a number made in the same way, that is, flat. Soon after this, the defendant invented his inclined projection, and proceeded to make a proper tool for cutting or milling it uniformly upon all his pistols, and to take out a patent for it. Upon the rejection above mentioned, he disclaimed the flat projection as not original with him. Now, upon this point the defendant's explanation is far from satisfactory. He says he signed what his solicitor sent him, which, no doubt, is true. But he does not say that he did not fully understand what he was doing. There is some intimation that he did not know who was supposed to have invented the flat projection. This is not very material; but he certainly had full means of knowledge, because he knew all about the White patent, and had had some negotiation about buying it, and he knew that the plaintiffs had in fact bought it. When he was referred by the commissioner of patents to the patent of White, and the application of the plaintiffs, he was put on an inquiry which he could easily satisfy, so far as he was not already informed. The pistols of the plaintiffs were in the market, and the solicitor, Mr. Cooper, whom the defendant then proceeded to employ, had been their solicitor in making their original application. We think, under these circumstances, he must be affected with the knowledge that the plaintiffs were the persons concerned. And his disclaimer is a very distinct admission that his discovery was not earlier than January, 1859, the date of the plaintiffs' rejected application.

Upon all the evidence, of which we have referred to only some of the more prominent points, we find, as matter of fact, that the plaintiffs' invention of the flat projection was first in time, and that they are entitled to our decree.

This view makes it unnecessary to decide whether the invention of the plaintiffs of tipping the cylinder of their pistols is identical in principle and mode of operation with that of the flat projection, and, if so, whether it is properly described and claimed in their patent.

### Case No. 13,000.
SMITH v. ALLYN.
[See Case No. 13,064.]

### Case No. 13,001.
SMITH v. ALLYN.
[See Case No. 13,065.]